THE BAY STATE GAS COMPANY, a corporation organized under the laws of the State of Delaware, and JOHN EDWARD ADDICKS, President of the said Bay State Gas Company, plaintiffs in error, *vs.* THE STATE OF DELAWARE upon the relation of HARRY CONTENT AND WALTER CONTENT, Co-partners, doing business under the firm name and style of H. CONTENT AND COMPANY, defendants in error.

*Mandamus—General Corporation Law; Construction of—Effect of on Corporations Previously Created—Service of Rule and Alternative Writ—Proper Parties Defendant—Effect of Joining an Unnecessary Party—Sufficiency of Petition and Alternative Writ—Demand and Refusal—When Demand is not Necessary— Pleading—Practice.*

1. Under the provisions of Section 3 of the General Corporation Law of this State, every corporation, whether formed under such law or previously formed under any other law of the State, is subject to the restrictions and liabilities of section 48 of said law, so far as the same are appropriate to, and not inconsistent with, the act of incorporation under which the previously existing corporation was formed.

2. The service of the rule to show cause, and of the alternative writ, in an action of mandamus against a corporation, by leaving a copy at the dwelling house or usual place of abode of the president of the corporation, is good and legal.

3. Where the material averment in the alternative writ is that certain books of the corporation are not kept at a particular place, in pursuance of the statute, and open to the inspection of the stockholders, an averment that the president of the company was the custos of the books is immaterial.

4. What undisputed facts establish such demand or act as may be necessary, under the law, to entitle the petitioners to the relief sought.

5. It is well settled in the law of mandamus that an actual demand and refusal are not necessary if the conduct of the defendant is equivalent to a refusal. When the office where the books are required to be kept is found to be closed, day after day for six consecutive days, so that admission cannot be obtained by a stockholder for the purpose of examining the books, *ipso facto* the books are not open to the examination of the stockholders, in accordance with the statute, and an actual demand is thereby rendered unnecessary and futile.

6. The essential allegations of fact necessary to entitle the petitioners to the relief sought.

7. In an action like the present the president of the corporation is not an improper party defendant with the corporation. It may be his duty to see that the desired act is performed. But, even though he be not a necessary party, it does not follow that his joinder would be improper or fatal to the writ.

8. Section 29 of said corporation law is equally as applicable, as section 48 to corporations previously created. There is no difference in principle.

9. Allegations in the alternative writ which are not denied must be taken as true.

(*Judgment rendered June 17, 1902; opinion handed down January 19, 1904.*)

Nicholson, Ch., and Pennewill and Boyce, J. J., sitting.

*Walter H. Hayes* and *Herbert H. Ward,* for plaintiffs in error.

*Anthony Higgins* and *Herbert R. Limburger* (of the New York bar) for defendants in error.

Supreme Court, January Term, 1902.

Writ of Error to the Superior Court for New Castle County. Petition for Mandamus.

PENNEWILL, J., delivering the opinion of the Court:

The plaintiffs below, as stockholders of the said Bay State Gas Company, on the 24th day of September, A. D. 1901, filed their petition in the Superior Court in and for New Castle County for a peremptory writ of mandamus, commanding the defendants below at all times during business hours to have open to the examination of said petitioners, at the principal office or place of business of said company in the State of Delaware, the original or duplicate stock ledger containing the names and addresses of the stockholders of said defendant company, and the number of shares held by them respectively.

Said petition was based upon Section 29 of the General Corporation Law of 1901. That part of Section 29 material to this case is as follows : " The original or duplicate stock ledger shall be the only evidence as to who are the stockholders entitled to examine such list of the books of the company, or to vote in person or by proxy, at such election. The original or duplicate stock ledger containing the names and addresses of the stockholders, and the number of shares held by them, respectively, shall, at all times, during the usual hours for business, be open to the examination of every stockholder at its principal office or place of business in this State, and said original or duplicate stock ledger shall be evidence in all courts of this State."

The petition, which is of considerable length, sets out in substance, *inter alia,* the following facts, which are practically undisputed by the plaintiffs in error:

That the petitioners, Harry Content and Walter Content, brokers, residing and doing business in the city of New York, are the holders of record of almost 200,000 shares of the capital stock of the Bay State Gas Company ; that the said Bay State Company was organized under the Act of the General Assembly of the State of Delaware, entitled " An Act to incorporate the Peninsula Investment Company," passed April 24, 1889, which was amended by an act passed the first day of March 1895 ; that the petitioners

B. S. G. CO. AND ADDICKS vs. CONTENT & CO. 241

OPINION.

were desirous of obtaining a list of the stockholders of the company and called at the office of the Metropolitan Trust Company, which was the registrar of the stock, in New York City, and of J. C. Klenck, a clerk of said Trust Company, who acted as transfer agent in said city, in the office of said Trust Company; that after considerable difficulty the petitioners were permitted to make extracts from the stock ledger, but had just finished copying the names of the stockholders whose names begin with "A" when this permission was revoked, and they were informed that the books had been removed over night and the transfer agency in New York City closed, and that the Metropolitan Trust Company was no longer the registrar of the said Bay State Gas Company, and were further informed that the books had been turned over to Mr. Miller, the Treasurer of the Company, at Philadelphia; that the petitioners thereupon attempted to procure the information and the list of stockholders from Miller, but that Miller stated to them that he had turned the books over to the personal possession of Mr. Addicks, who was at that time in Newport, Rhode Island; that the petitioners were unable to obtain the information desired in Philadelphia, and were not able to secure by any means a list of the stockholders of the company, and have been unable to transfer stock in New York or in Philadelphia; that thereupon the petitioners went to the City of Wilmington, in the State of Delaware, and called at the principal office of the Bay State Gas Company, in the City of Wilmington, for the purpose of making a demand upon the company and upon its president, to have at the principal office or place of business the original or duplicate stock ledger of the company containing the names and addresses of the stockholders, and the number of shares held by them, and to permit the petitioners to examine such original or duplicate stock ledger; that upon arriving at the said office on the fourteenth day of September, 1901, they found the same closed, with a notice upon the door that it was closed on account of the death of President McKinley, and would remain closed until further notice; that the petitioners

through their attorney visited said office upon each secular day of the following week, to wit, upon the sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first days of September, 1901, during all of which time the office was closed with the same notice attached thereto; wherefore they were not able to procure an examination of the books or to make any further demand at the said office. That on the twentieth day of September, 1901, the petitioners served a written demand upon the defendant Addicks, the President of the Company, with which he did not comply.

The petitioners claim they were entitled to the relief sought, under the provisions of said Section 29 of the General Corporation Law. The defendants below, on the other hand, contend that they are not bound by the provisions of said Section 29, for the reason that such provisions apply to corporations formed under said General Corporation Law, and not to corporations in existence prior to its enactment and approval, such as the Bay State Gas Company.

Without enumerating the various steps in the proceedings in the court below, it is sufficient to say here that the Court ordered the issuance of the peremptory writ, as prayed for by the petitioners.

Many questions were raised, and exceptions taken, to the rulings of the Court below, but we think the numerous assignments of error may be conveniently grouped under the few points which we will consider in the order followed by the plaintiffs in error in the argument before this Court.

1. The first question raised by the assignments of error goes to the service of the rule to show cause, and of the alternative writ, upon the Bay State Gas Company.

The only service, or attempted service, of said rule and alternative writ upon the defendant company was by leaving a copy at the dwelling house or usual place of abode of John Edward Addicks, President of said Bay State Gas Company, six days before the return day thereof.

B. S. G. CO. AND ADDICKS vs. CONTENT & CO. 243

OPINION.

It is insisted by the plaintiffs in error that such service is manifestly bad and incompetent under the practice of the courts and the statutes of the State, unless it can be held that Section 48 of the General Corporation Law provides a proper method for service of such rule and writ upon said corporation.

*Rev. Code (1893), Chap. 70, Sec. 6, p. 567; State vs. McCoy, 2 Mar. pp. 483, 484.*

The plaintiffs in error deny, however, that section 48 can be so construed, or have any application to the present case; and insist that by the express terms of said section it appears that the service of legal process upon corporations, as therein provided, is limited to service upon corporations created under the General Corporation Act.

Section 48 of said Corporation Law provides as follows:

" Service of legal process upon any corporation created under this act shall be made by delivering a copy thereof personally to the president of such corporation, or by leaving the same at his dwelling house or usual place of abode. If the president resides out of the State, service thereof may be made by delivering a copy thereof to the secretary or one of the directors of said corporation, or by leaving the same at the dwelling house or usual place of abode of such secretary'or director, or at the principal office or place of business of the corporation in this State. Service by copy left at the dwelling house or usual place of abode, or at the said principal office or place of business in this State, to be effective must be delivered thereat at least six days before the return of the process, and in the presence of an adult person ; and the officer serving the process shall distinctly state the manner of service in his return thereto ; provided that process returnable forthwith must be served personally."

The defendants in error, while admitting that said section would seem at first blush to be limited to " corporations created

under this act," contend, nevertheless, that it has an application and effect beyond the scope of the act of which it forms a part, and is made applicable to previously existing corporations by section 3 of the same act, which is as follows:

" SECTION 3.—In addition to the powers enumerated in the second section of this act, every corporation, its officers, directors and stockholders shall possess and exercise all the powers and privileges contained in this act, and the powers expressly given in its charter or in its certificate, under which it was incorporated, so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation, and shall be governed by the provisions, and be subject to the restrictions and liabilities in this act contained, so far as the same are appropriate to, and not inconsistent with, such charter or act under which such corporation was formed; and no corporation shall possess or exercise any other corporate powers except such incidental powers as shall be necessary to the exercise of the powers so given."

In considering the application of section 48, there are two questions which arise:

*First*—Had the Legislature power to enact such new provisions as are contained in said section, with regard to previously existing corporations?

*Second*—Was it the intention of the Legislature to make said section of the General Corporation Law applicable to previously existing corporations?

We did not understand at the argument that the plaintiffs in error seriously questioned the *power* of the *Legislature to impose such provisions upon pre-existing corporations,* their chief and serious contention being that such provisions *were not intended by the Legislature to apply to such corporations.*

B. S. G. CO. AND ADDICKS vs. CONTENT & CO. 245

OPINION.

It is the question of the applicability of said section, therefore, that we will more particularly consider.

If section 48 does not apply to corporations created prior to the General Corporation Law, there does not seem to be, under the law, any means or method provided for obtaining service of process, in a case like the present, where the president of the corporation has a residence in the State, but is not in fact within the State so that process may be served upon him. The question raised, therefore, is one of the utmost importance to the citizens of this, as well as of other States, interested in corporations of this State.

It seems to us to be manifest from a mere reading of section 3, that it was intended to apply *to previously existing corporations, as well as to corporations created under the General Corporation Law ;* and that no argument is needed, or reason required, for such a construction, beyond that found in the plain and natural meaning of the very words of the section. The plaintiffs in error appreciate the force of this, but argue that if the section does refer to pre-existing corporations it cannot be such as were created prior to the present Constitution, but those that were created after the promulgation of the Constitution, and prior to the enactment and approval of the General Corporation Law. The reasoning of the plaintiffs in error upon this point seems to us unsatisfactory, and the construction they would place upon the statute entirely too narrow. It is much more reasonable to assume that when the Legislature, in section 3, provided that "every corporation   *   *   *   *   shall possess and exercise all the powers and privileges contained in this act, *and the powers expressly given in its charter or in its certificate under which it was incorporated, so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation, and shall be governed by the provisions and be subject to the restrictions and liabilities in this act contained, so far as the same are appropriate to and not inconsistent with such charter or act under which such corporation was formed,"* it intended that every corporation, whether formed under the General Corpora-

tion Law, or previously formed under any law of the State, should be subject to the restrictions and liabilities of section 48, as well as other sections of said Corporation Law, so far as the same are appropriate to, and not inconsistent with, the Act of Incorporation under which the previously existing corporation was formed.

It is true that section 48 provides that "service of legal process upon any corporation *created under this act* shall be made," etc. That section undoubtedly was dealing with such corporations only, but there is nothing in the language therein employed to prevent section 3 of the same act from imposing the provisions of section 48 upon other corporations. The one section is specific and limited, the other general in its effect and operation, and sufficiently general to carry the provisions of the former section beyond the limitations and scope of that section. And we do not see any particular force in the argument, that because section 2 provided that "every corporation created under the provisions of this act shall have power," etc., and section 3 begins, "In addition to the powers enumerated in the second section of this act, every corporation," etc., the latter provision is therefore limited to corporations created under the act. Even though section 3 be construed in connection with section 2, there is nothing illogical or unnatural in holding that, in addition to the powers conferred and the duties imposed by section 2 upon *certain* corporations, there were other powers conferred and duties imposed by section 3 upon *all* corporations, whether created by said act or previously existing.

There does not appear to be any *conflict* between section 48 and section 3, and the authorities cited by the plaintiffs in error upon that point are, therefore, inapplicable.

While the decision of the Court of another jurisdiction may be entitled, ordinarily, to little weight in the determination of a question involving the construction of a statute of our own State, it is of some assistance when the case is strikingly analogous to our own, and the decision is based upon sound reasoning. Such seems to be the case of *Victor G. Bloede vs. The Joseph Bancroft & Sons Com-*

B. S. G. CO. AND ADDICKS vs. CONTENT & CO. 247

OPINION.

*pany,* in the Circuit Court of the United States, for the District of Maryland. The question in that case was whether a corporation organized prior to the General Corporation Law of Delaware of 1899 acquired, by virtue of that law, the additional rights and privileges provided for by Section 133 of that law, which were privileges and rights not contained in its original charter, but, nevertheless, consistent with the charter rights, to wit—the right to purchase and hold the shares of capital stock of any other corporation and exercise all the rights of the stockholder.

Section 133 of the Law of 1899 was as follows:

" SECTION 133. Any corporation created under the provisions of this act may purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of, the shares of the capital stock of, or any bonds, securities or evidence of indebtedness created by, any other corporation or corporations of this State or any other State, country, nation or government, and while owner of said stock may exercise all the rights, powers and privileges of ownership, including the right to vote thereon."

Section 3 of the General Corporation Law of 1899 was identical with Section 3 of the Corporation Law of 1901.

Judge Morris, in the opinion delivered in this case, said : " It appears, I think, that by Section 3 existing corporations were given the same powers and privileges as corporations created under that act, so far as necessary or convenient to the attainment of the object set forth in their respective certificates of incorporation, and by Section 133 any corporation created under that act may be a stockholder in another corporation and exercise all the rights of a stockholder, etc."

This decision was affirmed by the United States Circuit Court of Appeals—the opinion, however, not passing upon the particular point here under consideration.

It appears then that the only Court that has passed upon the effect of section 3 as to pre-existing corporations of this State, prior to the decision of the Court below, has held that by virtue of

said section, the other provisions, so far as necessary or convenient, are applicable.

We think the service of the alias rule and alternative writ in the present case was legal and sufficient.

2. The next question raised by the assignments of error has reference to the service of said rule and writ upon John Edward Addicks, President of the Bay State Gas Company, one of the defendants, by leaving copies thereof at his usual place of abode at least six days before the return day thereof.

The ground of this contention, is that under the law the only service that is made legal by leaving copies of writs or process for the commencement of actions, is confined to writs of summons and *scire facias.*

This contention was stated rather than argued, and we do not think much insistence was placed upon it. In our opinion such a construction would be a very narrow and improper one, and not justified by any rules of law or reason. We hold the service of said rule and writ upon Addicks as President of said company good and sufficient in law.

3. In the Court below a motion was made by the defendants to quash the alternative writ because it did not make out a *prima facie* case entitling the plaintiffs to the remedy asked for; and, moreover, because it showed upon its face that the issuance of the writ against John Edward Addicks, one of the defendants, would be wholly nugatory. The specific reasons relied upon by the plaintiffs in error to sustain such motion were as follows :

(*a*) " That in the alternative writ the petitioners further allege, upon information and belief, that the affairs of the Bay State Gas Company have been grossly mismanaged, and that the present management is either not desirous of advancing the interests of the stockholders, or is incapable of acting in a proper manner so to do."

It is only necessary to say in reference to this objection, that it goes to an averment that is entirely immaterial to the real issue in the case, which is, whether the original or duplicate stock ledger mentioned in section 29 was kept open to the examination of the stockholders as provided in said section.

(*b*)  " That the averment which is relied on to show that John Edward Addicks, one of the defendants below, was the custos of the books sought to be produced, amounts to no more than an averment that Miller, a person not a party to the action, but who is averred to be the treasurer of the defendant company, stated to one of the petitioners, Walter Content, that the said books were then, to the knowledge of the said Miller, in the personal possession of the said Addicks."

It may be said in reference to this objection, also, that it goes to an unnecessary and immaterial averment.  We cannot see how the fact that Addicks was the custos of the books is at all relevant to the question whether the books were open to the inspection of the stockholders at the proper place and times.  In the diligent and persistent efforts made by the plaintiffs below to secure an examination of the books, a call and demand were made upon Addicks therefor, and they were made, no doubt, in pursuance of the information received from Miller.  But such demand was only a circumstance to show that all means were exhausted to secure such examination before instituting the present action.  The law did not require a demand upon Addicks in Philadelphia as the custodian of the books.  The plaintiffs below were required only to make a demand, if any demand were necessary at all under the circumstances, at the home office or principal place of business of the company in this State.

(*c*)  " That the alternative writ nowhere declares that any demand was made, either upon the corporation, or upon any one

17

representing it, or upon the defendant, Addicks, at the time and place described in the statute."

The following allegations of the petition are undisputed : That the petitioners called at the principal office of the defendant company in this State, at the northeast corner of Fifth and Shipley streets, in the City of Wilmington, for the purpose of making demand ; that the office was closed on the fourteenth day of September, upon which they called ; that a notice was posted thereon that it was closed beeause of the death of President McKinley; that they thereupon called at said office on the sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first days of September, and the office was closed on each of said days, and the same notice was still attached to the door; that they made a demand in New York, which was at first complied with, but the compliance thereafter revoked ; that they also made a demand in Philadelphia, which was not complied with ; and that they further made a personal demand upon the defendant, Addicks, the President of the company, which was not complied with.

We are clearly of the opinion that such undisputed facts establish whatever demand or act that may have been necessary under the law to entitle the petitioners to the relief sought. They did all that could reasonably be required, under the circumstances, to gain the object desired. We think the repeated, though unsuccessful, efforts made day after day for several consecutive days to gain admission to the office where the books should have been kept, met all the requirements of the law, to be performed on the part of the petitioners, and were sufficient to relieve them from any further attempt to make an effective demand. The demands made at other places, while not necessary, show, nevertheless, that no efforts had been lacking on the part of the plaintiffs below to secure their rights under the statute, the performance of which it is the purpose of this action to enforce.

It may be also said that when the principal office of the defendant company was found to be closed day after day for six

B. S. G. CO. AND ADDICKS vs. CONTENT & CO. 251

OPINION.

consecutive days, so that admission could not be obtained by a stockholder for the purpose of examining the books, *ipso facto* the books were not open to the examination of the stockholders, in accordance with the statute, and an actual demand was thereby rendered unnecessary and futile.

It is well settled in the law of mandamus that a demand and a refusal are not necessary if the conduct of the defendant is equivalent to a refusal. The rule is well and clearly stated in *Merrill on Mandamus, Sec. 225*, as follows :

" The law never demands a vain thing, and when the conduct and action of the officer is equivalent to a refusal to perform the duty desired, it is not necessary to go through the useless formality of demanding its performance. Anything showing that the defendant does not intend to perform the duty is sufficient to warrant the issuance of a mandamus."

See also *Commonwealth vs. Pittsburg, 43, Pa. State, 496.*

We think the alternative writ sufficiently avers a demand and refusal, or at least conduct, on the part of the defendant, equivalent to a refusal to perform the duty desired.

And we also think said writ contains all essential allegations of fact to entitle the petitioners to the relief sought, inasmuch as it is distinctly averred therein, and not in fact disputed (1) That the defendant company is a corporation. (2) That the plaintiffs below were stockholders of such corporation. (3) That there was a proper demand made by the plaintiffs and refusal by the defendants, or conduct equivalent thereto. (4) That the defendants have failed to perform the duty imposed upon them by law, and sought to be enforced by this proceeding.

The return to the alternative writ does not traverse any material allegation therein, and it is a well settled principle of law that allegations in the writ which are not denied must be taken as true.

(d)   The last reason urged by the plaintiffs in error in support of the motion to quash the alternative writ is "That John Edward Addicks, President of the Bay State Gas Company, is improperly joined as a defendant therein, he not appearing to be the custodian of the books in question, and no duty being imposed upon him by law in reference thereto."

It is alleged in said writ that Miller, treasurer of said company, informed the petitioners that the books were in the possession of Addicks, president of the company.   But independent of this averment, it is a fact, and undisputed, that Addicks was the president and head officer of the defendant company.

In *Merrill on Mandamus, Sec. 237*, it is said: "If the act sought is a duty incumbent on a corporation, the writ of mandamus shall be directed to the corporation itself, or to the select body of officers, in the corporation, whose province or duty it is to perform the particular act, or to put the necessary machinery in motion to secure its performance; or to the corporation and the select body jointly."   Manifestly, in the absence of anything appearing to the contrary, it was as much, if not more, the duty of the president of the defendant company, than of any one else, to see that the duty required was performed; and we cannot conceive that any one could have greater power to secure the performance of the duty by the corporation.

But even though the president were not a necessary party to the action, it does not follow that his joinder would be improper or fatal to the writ.   In the case of *State vs. Leon, 66 Wis., 199*, the Court said: "The last ground relied on for quashing the writ is that there is a misjoinder of parties.   The writ is directed to the board and town clerk.   It is said the clerk has no duty to perform in the premises, and should not have been made a party.   It may be that the clerk was not a necessary party to the proceeding; but the fact that he is made a party furnishes no reason for quashing the writ as to the supervisors.   It is not clear but that it was proper to make him a party, but we shall not decide that point—

B. S. G. CO. and ADDICKS vs. CONTENT & CO. 253

OPINION.

In any event the fact that he i s made a party affords no reason, as we have said, for quashing the writ."

In the case of *People ex rel. Muyr vs. Throop, 12 Wend. (N. Y.), 185,* mandamus was brought to secure the inspection of bank books. The books were in the possession of the cashier. It was held that it was not improper to join the chashier who had personal possession of the books, and the directors who had not. The Court said: " The mandamus might properly be directed to the cashier, and need not be directed to the Board—as notice had been given to the directors there would be no impropriety in directing the writ to them as well as to the cashier."

And in the case of *Swift vs. Richardson, 7 Houst., 338,* cited by the plaintiffs in error, it was held that " If the writ should be addressed to the one having the books and records—it would seem that the corporation was not only not a necessary party, but should not be a party according to such practice, although the addition of the corporation, or including it in the rule, would not vitiate the proceedings."

And so in the present case, even though Addicks were not a necessary party, still the fact that he was joined as a party defendant with the corporation, would not invalidate the writ, vitiate the proceedings, or in any sense relieve the corporation.

We are of the opinion that there was no error in the refusal of the Court below to quash the alternative writ for any of the reasons assigned by the plaintiffs in error.

The only other point raised by the assignments of error and argued before this Court, which would seem necessary to notice, is the question of the applicability of Section 29 of the General Corporation Law to the Bay State Gas Company, one of the parties defendant.

But we think we have already sufficiently covered this question. Indeed, it seemed to be assumed in the argument that a decision as to the effect of section 48 upon previously existing corporations would dispose of the question as to the effect of section 29.

All that we have said respecting the applicability of section 48 to said defendant company equally applies to section 29. There can be no difference in principle; and there would seem to be less difficulty in holding the latter section applicable, for the reason that it does not contain the words "corporation created by this act," which are found in section 48.

We may say, in conclusion, that the fact that the defendant company has never had its charter amended under the General Corporation Law, or filed an acceptance of the provisions of the Constitution, seems to us to be entirely immaterial to the questions raised in this case.

We think there were no errors in the rulings and decisions of the Court below, and the judgment of said Court is therefore affirmed.